IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michael Zachmann and Ariel Ulberg, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>The Coleman Company Inc.,<br><br>Defendant | 7:20-cv-09146-VB<br><br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.  The Coleman Company Inc. ("defendant") manufactures, markets, distributes and labels portable coolers which purport to retain ice for five days ("Product").

2.  A reliable portable cooler is an indispensable part of every American family's outdoor gear.

3.  Whether going to the beach, Fourth of July and Labor Day barbecues, camping, picnics or sporting events, a cooler that will not "melt" in big spots is essential.

4.  Defendant is aware of consumer demand for coolers which provide maximum ice retention, and prominently claims its coolers retain ice for five days through the statements, "5 DAYS" immediately above "KEEPS THE ICE."





5.      Some of defendant's coolers qualify the "KEEPS THE ICE – 5 DAYS" claim through a light font and small size statement, "ICE STORAGE AT 90 DEGREES FAHRENHEIT."

2





6. Defendant defines "KEEPS THE ICE" as the number of days it takes for all the ice in a packed cooler to melt into liquid.

7. Defendant's definition of "keeps the ice" is the number of days it takes for all the ice to melt into liquid starting from the ice cooler being filled to capacity with ice.

8. However, the promise to "KEEP THE ICE" for five days is a scientific impossibility.

9. Ice is defined as a "solid state of water" or "water that maintains a temperature of 32 degrees Fahrenheit."

10. "Keep" means to "retain in possession or able to hold" certain characteristics.

11. "Ice" that changes its state of matter is known as water, a liquid.

12. "Ice" is a noun and distinct from adjectives like "hot" and "cold."

13. "Hot" and "cold" are subjective because they describe varying range of temperatures.

14. According to a scientific definition, any amount of ice remaining in an ice cooler should remain in solid state of matter.

15. Once any part of the original ice has melted, it fails to "keep" its characteristics.

16. The representation that the cooler "KEEPS THE ICE" for five days is not supported by science or the plain meaning of the terms.[1]

17. Defendant's definition of "KEEPS THE ICE" does not simulate how a typical consumer would use their coolers.

18. Consumers do not fill their coolers to the brim with ice.

19. Instead, they use several bags of ice to keep their food and beverages chilled.

20. Defendant's disclaimer – "ICE STORAGE AT 90 DEGREES FAHRENHEIT" – is misleading because it fails to reveal that the "storage" location is a laboratory setting, which fails to replicate real-world usage of the coolers.

21. Moreover, Defendant fails to disclose the amount and type of ice used, i.e., block ice, dry ice or cubed ice, the variance in ambient temperature, whether the cooler and stored items were pre-chilled prior to the experiment.

---

[1] *Scientific laws* are based on repeated experiments that describe a range of natural phenomena. *Scientific theory* is an explanation of an aspect of the natural world that can be repeatedly tested and verified in accordance with the scientific method, using accepted protocols of observation, measurement and evaluation of results.

22. These and other variables are significant because they impact the strength and legitimacy of the "KEEPS THE ICE – 5 DAYS" representation.

23. Competitor coolers do not promise to retain ice for five or any number of days.

24. Defendant has known for several years that consumers are misled by the "KEEPS THE ICE – 5 DAYS" claim.

25. Numerous complaints about the Product have been lodged by consumers dissatisfied with the ice retention claims through Walmart.com and defendant's website.

> May 1, 2020 | Verified purchase
>
> I am very disappointed in this cooler! It's manufacturer claims it keeps items cold for 5 days, so not true! With 2 bags of ice it only kept ice and items cold for 3/4 of a day! That is the only part I do not like about it! I will return this item back to where I bought it.
>
> vickie

It's manufacturer claims it keeps items cold for 5 days, so not true! With 2 bags of ice it only kept ice and items cold for ¾ of a day

> ★☆☆☆☆   waste of money
>
> June 19, 2020
>
> Was reading reviews and thought I would give this cooler a chance with it saying 5 days of holding ice. .it does not last even through a night. Do not buy this cooler unless u like going to the store and buying ice every day! Big Mistake!

I would give this cooler a chance with it saying 5 days of holding ice..it does not last even through a night.

> ★☆☆☆☆   Ice melts in hours not days
>
> August 17, 2020 | Verified purchase
>
> Very disappointed in this cooler. Its advertised to keep ice for 5 days. I'm not sure we've even made it through the day without complete melting. And the weather where I live isn't the hottest of the hot (we hit mid 80s 2 or 3 weeks in the summer on a normal year).

Its advertised to keep ice for 5 days. I'm not sure we've even made it through the day without complete melting.

26. Defendant acknowledged the consumers who brought this issue to its attention and apologized to them, writing, "We want to sincerely apologize for your negative experience…we're intent on making this right."

**Coleman** Comment from The Coleman Company - 08/17/2020

We want to sincerely apologize for your negative experience. However, we'd like to learn more about your situation and what exactly happened. We want to make things right. So, please give us a call at 1-800-835-3278, Monday - Friday from 9:00 am - 5:00 pm CST. You can also email us through https://www.coleman.com/contactus/ and we will get back to you promptly. We look forward to hearing from you.

**Coleman** Comment from The Coleman Company - 05/05/2020

We want to extend our sincerest apologies concerning the issue that you have faced on our Cooler. We pride ourselves on maintaining the highest quality standards for our customers. If you give us a chance, we are intent on making this right and hope you will allow us to speak with you to discuss the situation. Please contact our Consumer Care hotline at 1-800-835-3278. For your convenience, we are available from Monday to Friday from 8:00 am to 5:00 pm CST. We would love to hear more about this concern.

27. On the Walmart.com page for customer reviews of the Product, no consumers indicate they experienced the ice retention touted by defendant.

28. Other consumers have measured defendant's ice retention claims on YouTube, dubbing this a "5 Day Ice Challenge."

29. One customer filled the Product to the brim with ice, but after four days, there was no ice left and the water was 58 degrees Fahrenheit.[2]

30. Another consumer performed the same experiment with defendant's high end "Marine Cooler" model.

31. However, the result was identical, as the ice was fully melted by the 4th day.[3]

32. These real-world experiments demonstrate that "KEEPS THE ICE – 5 DAYS" is

---

[2] https://www.youtube.com/watch?v=ffWIxcKuug0 – result available at 18:55 minute mark.
3 https://www.youtube.com/watch?v=K3l47v7fw3s – result available at 5:20 minute mark.

false, deceptive and misleading, even when using defendant's own definition.

33. Consumers will expect that "KEEPS THE ICE – 5 DAYS" will not only be true, but that the cooler will keep the food and beverages contained inside chilled for the same five days.

34. However, the Product does not keep food and beverages chilled for five days.

35. However, Defendant's claims are false.

36. When users of the Product fill it with ice and add food and beverages, at the end of five days their items will be submerged in water.

37. Defendant's claims are false, materially misleading, and reasonably likely to deceive the public at large.

38. Defendant misrepresented the Products through affirmative statements, half-truths, and omissions.

39. Defendant's omissions and failures to disclose these facts is deceptive and misleading to consumers seeking a cooler that can retain ice and keep their food and beverage chilled for five days.

40. Defendant's branding and packaging of the Product is designed to – and does – deceive and mislead Plaintiffs and consumers.

41. Defendant sold more of the coolers and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

42. The value of the Products that Plaintiffs purchased and used was materially less than their value as represented by Defendant.

43. Due to the false and misleading labeling, the Products are sold at premium prices.

44. Had Plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for them.

Jurisdiction and Venue

45. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. Plaintiff Michael Zachmann is a citizen of New York.

47. Defendant The Coleman Company Inc., is a Kansas corporation with a principal place of business in Kansas.

48. Diversity exists because plaintiff Zachmann and defendant are citizens of different states.

49. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

50. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred here – plaintiff Zachmann's use of the Colman cooler and his awareness that its ice retention claims were not true.

51. Venue is further supported because many class members reside in this District.

Parties

52. Plaintiff Michael Zachmann is a citizen of Pawling, Dutchess County, New York.

53. Plaintiff Ariel Ulberg is a citizen of Sayville, Suffolk County, New York.

54. Defendant Coleman Company Inc., is a Kansas corporation with a principal place of business in Wichita, Kansas.

55. Defendant sells the Product throughout the United States through retail and online stores, including Walmart, Target, Costco, Amazon.com and Ebay.com.

56. The price of the Coleman coolers range from $50 to $200, excluding tax.

57. Defendant led Plaintiffs and reasonable consumers to believe the Products will retain ice for five days.

58. Plaintiff Zachmann purchased the Product at Walmart, 164 Danbury Rd, New Milford, CT 06776, no earlier than October 28, 2018.

59. Plaintiff Ulberg purchased the Product at Home Depot, 301 S Research Pl, Central Islip, NY 11722, no earlier than September 29, 2018.

60. The cost of the Coleman coolers purchased by Plaintiffs were approximately fifty dollars.

61. Plaintiffs purchased the coolers for personal use in reliance on the representations that they would retain ice for five days.

62. Plaintiffs used the coolers throughout New York for events including picnics, barbecues, recitals, trips to the beach, family getaways and/or holidays.

63. The coolers did not perform as represented by defendant on the labeling.

64. Had Plaintiffs known the coolers would not perform as represented, they would not have paid a premium price for them, and would have purchased other, less expensive coolers.

65. Plaintiffs would purchase the coolers again if they were able to rely on the truthfulness of their representations regarding their ability to retain ice and keep food and beverages cold.

Class Allegations

66. The class will consist of all purchasers of the Products with the above-referenced ice retention claims, in New York, during the statutes of limitations for each cause of action alleged.

67. Plaintiffs seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

68. Common questions of law or fact predominate and include whether defendant's representations and marketing were and are misleading and if plaintiffs and class members are entitled to damages and refunds.

69. Plaintiffs' claims and bases for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

70. Plaintiffs are adequate representative because their interests do not conflict with other members.

71. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

74. Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

75. Plaintiffs incorporate by reference all preceding paragraphs.

76. Plaintiffs and class members sought to purchase coolers that would retain ice for five days and keep their food and beverages cold for five days.

77. Defendant's actions impact the public at large because Plaintiffs and members of the Class were injured in the same way as thousands of others purchasing the Products as a result of Defendant's deceptive conduct.

78. By committing the acts alleged, Defendant misled Plaintiffs into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have qualities they do not have, *viz*, they can keep ice for five days.

79. Had Plaintiffs and members of the Class known of the true facts about the Products' failure to work as promised, they would not have purchased the Products and/or paid substantially less for them or competing products.

Breaches of Express Warranty and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

80. Plaintiffs incorporate by reference all preceding paragraphs.

81. Defendant is, and at all times relevant was, a merchant and sold goods to Plaintiffs.

82. Defendant made affirmations of fact and promises about the quality of the coolers and made the following warranty statement:

> **Your product must be under warranty in order to obtain warranty service.**
> Coleman® products have a limited warranty from the date of original retail purchase that the product will be free from defects in material and workmanship. The length of the limited warranty may vary by product. The warranty is valid for the original retail purchaser from the date of initial retail purchase and is not transferable.

83. Defendant expressly extended the warranty to the original retail purchaser and warranted the coolers would be:

    a. in good quality;

    b. generally fit for their intended purpose;

    c. merchantable; and

      d.  free from defects.

84. Plaintiffs relied upon Defendant's express warranty regarding its specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an unreasonable risk of harm or place an undue burden upon Plaintiff.

85. Defendant breached its express warranties to Plaintiffs which required that it would provide goods that would perform as indicated.

86. Defendant sold the Products to Plaintiffs and consumers after it gained knowledge of the non-conformance.

87. At the time Defendant warranted and sold the goods, it knew they did not conform to the warranties.

88. Defendant wrongfully and fraudulently misrepresented and concealed materials facts regarding its goods.

89. Defendant was provided with notice, and has been on notice, of its breach of express written warranties through hundreds of consumer warranty claims and customer complaints.

90. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs suffered damages in an amount to be determined at trial.

<u>Breach of Implied Warranty of Merchantability(N.Y. U.C.C. § 2-314)</u>

91. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

92. Defendant is a merchant and sold goods to Plaintiffs.

93. Defendant conferred express warranties to Plaintiffs by extending the warranty to "original retail purchasers."

94. The express warranties were written offers to Plaintiffs.

95. Plaintiffs accepted the offers when they paid for and purchased the Products, thereby, creating privity with defendant.

96. According to N.Y. U.C.C. § 2-314(2)(f), goods must "conform to the promise or affirmations made on the container or label, if any."

97. Defendant's Products did not conform to the promises made on the label.

98. Plaintiffs and class members suffered damages caused by Defendant's breach of the implied warranty of merchantability and are entitled to recover compensatory damages.

### Negligent Misrepresentation

99. Defendant had a duty to truthfully represent the Products, which it breached.

100. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the coolers.

101. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

102. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

103. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Fraud

104. Defendant misrepresented and/or omitted the attributes and qualities of the Products.

105. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

106. Plaintiffs and class members would not have purchased the Products or paid as much

if the true facts had been known, suffering damages.

## Unjust Enrichment

107. Defendant obtained and retained benefits and monies due to the representations of the Products, which were not truthful.

108. Plaintiff and class members seek disgorgement and restitution of profits retained by defendant as a result.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct and cease the challenged practices;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: April 19, 2021

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan

Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

Law Office of James Chung
James Chung
43-22 216th Street
Bayside NY 11361
Tel: (718) 461-8808
Fax: (929) 381-1019
Jchung_77@msn.com

15