UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MICHAEL ZACHMANN and ARIEL        :
ULBERG, individually and on behalf of all    :
others similarly situated,             :
                   Plaintiffs,    :
v.                                 :
                                 :
THE COLEMAN COMPANY INC.,       :
                   Defendant.   :
-----------------------------------------------------------------x

**OPINION AND ORDER**

20 CV 9146 (VB)

Briccetti, J.:

Plaintiffs Michael Zachmann and Ariel Ulberg bring this putative class action claiming that portable coolers manufactured by defendant The Coleman Company Inc. do not retain ice for five days, as promised.

Now pending is defendant's motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. #16).

For the reasons set forth below, the motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

Defendant "manufactures, markets, distributes, and labels" a variety of portable coolers (Doc. #15 ("Am. Compl.") ¶ 1), which are sold online and in stores.  The portable coolers are labeled with variations on the statements "KEEPS THE ICE" and "5 DAYS."  (Id. ¶¶ 4–5).  For example, one of defendant's sixty-two-quart wheeled coolers includes the label "5 DAYS" directly above the label "KEEPS THE ICE" (id. ¶ 4); and one of defendant's fifty-quart coolers

includes the label "KEEPS THE ICE!  5 DAYS" with the statement "ICE STORAGE AT 90° F" in smaller and lighter-colored type to its left.  (Id. ¶ 5).[1]  Plaintiffs understand these labels to be promising that when defendant's coolers are filled with ice, the ice will not melt for five days.

Plaintiffs also allege defendant's coolers include the following warranty:

> **Your product must be under warranty in order to obtain warranty service.** Coleman® products have a limited warranty from the date of original retail purchase that the product will be free from defects in material and workmanship. The length of the limited warranty may vary by product.  The warranty is valid for the original retail purchaser from the date of initial retail purchase and is not transferable.

(Am. Compl. ¶ 82).

Plaintiff Michael Zachmann is a citizen of Pawling, New York.  He purchased one of defendant's coolers at a Walmart store in New Milford, Connecticut, "no earlier than October 28, 2018."  (Am. Compl. ¶ 58).

Plaintiff Ariel Ulberg is a citizen of Sayville, New York.  She purchased one of defendant's coolers at a Home Depot store in Central Islip, New York, "no earlier than September 29, 2018."  (Am. Compl. ¶ 59).

Plaintiffs allege they purchased defendant's coolers "in reliance on the representations that they would retain ice for five days" (Am. Compl. ¶ 61), but that when plaintiffs used the coolers for various family events, the coolers did not perform as promised.  Plaintiffs further allege the coolers are sold at a premium price because of the "keeps the ice" labelling, and that they either would not have paid this premium or would not have purchased the coolers at all, had they known the labelling was inaccurate.  (Id. ¶¶ 43–44, 64).

---

[1]    Throughout this Opinion and Order, the Court refers to these labels collectively as "keeps the ice" labelling.

According to plaintiffs, other customers have complained to defendant and its retailers that the coolers do not perform as promised.  In support, plaintiffs quote three online customer reviews in their pleading.  One review, dated May 1, 2020, states:  "I am very disappointed in this cooler!  It's [sic] manufacturer claims it keeps items cold for 5 days, so not true!  With 2 bags of ice it only kept ice and items cold for 3/4 of a day!"  (Am. Compl. ¶ 25).  The second review, dated June 19, 2020, states:  "Was reading reviews and thought I would give this cooler a chance with it saying 5 days of holding ice.  [I]t does not last even through a night."  (Id.).  The third review, dated August 17, 2020, states:  "Very disappointed in this cooler.  Its [sic] advertised to keep ice for 5 days.  I'm not sure we've even made it through the day without complete melting."  (Id.).  Plaintiffs also allege defendant responded to these customer reviews online.

Further, plaintiffs cite two YouTube videos that purportedly show defendant's coolers do not " keep the ice" for five days.  (Am. Compl. ¶¶ 28–31).  In one video, dated August 8, 2018, and titled "Cooler Challenge," a product reviewer places two bags of ice and a two-liter bottle of ice in one of defendant's coolers and reveals that, after three days outside, all ice in defendant's cooler, including all ice in the two-liter bottle, melted.  Cooler Challenge (YETI, Kenai, Coleman) 150lbs of Ice, YouTube (Aug. 7, 2018), https://www.youtube.com/watch?v=ffWIxcKuug0/.

Plaintiff Zachmann commenced this putative class action on October 31, 2020, asserting claims for violations of Sections 349 and 350 of the New York General Business Law ("GBL"), breach of express warranty, negligent misrepresentation, fraud, and unjust enrichment.  (Doc. #1).  Defendant thereafter moved to dismiss the complaint in its entirety.  (Doc. #8).

Following defendant's motion to dismiss, the Court issued an order requiring plaintiff to notify the Court within ten days whether he would file an amended pleading or rely on the original complaint.  (Doc. #10); see Individual Practices of Judge Vincent L. Briccetti 2.D.  The order warned plaintiff that if he declined to amend his complaint, the Court would be "unlikely to grant plaintiff a further opportunity to amend to address the purported deficiencies made apparent by the fully briefed arguments in defendant's motion."  (Doc. #10).

Plaintiff amended his complaint.  The amended complaint joined a new plaintiff and proposed class representative, Ariel Ulberg; reasserted the same claims; and added new claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and breach of implied warranty.  Thereafter, defendant moved to dismiss the amended complaint.

**DISCUSSION**

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

To survive a Rule 12(b)(1) motion, the allegations in the proposed complaint must demonstrate, among other things, that plaintiff possesses Article III standing to seek the relief requested.  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).  A plaintiff must demonstrate standing for each form of relief sought.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

II.     Claims Under GBL Sections 349 and 350

Defendant first argues Zachmann's GBL claims must be dismissed because he purchased his cooler in Connecticut.  Defendant further argues both plaintiffs do not state GBL claims because the amended complaint does not sufficiently allege a causal connection between plaintiffs' purchase of the coolers and the coolers' allegedly deceptive labels.

The Court agrees with both arguments.

A.   <u>Legal Standards</u>

GBL Section 349 provides:  "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).

GBL Section 350 provides:  "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state is hereby declared unlawful."  N.Y. Gen. Bus. Law § 350.

"The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349."  <u>Goshen v. Mut. Life Ins. Co.</u>, 98 N.Y.2d 314, 324 n.1 (2002).

To state a Section 349 or 350 claim, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521–22 (2d Cir. 2000) (per curiam).  Further, a plaintiff must establish causation, that is, "a causal connection between some injury to plaintiffs and some misrepresentation by defendants."  <u>Small v. Lorillard Tobacco Co.</u>, 252 A.D.2d 1, 15 (1st Dep't 1998), <u>aff'd</u>, 94 N.Y.2d 43 (1999).

Moreover, Sections 349 and 350 only protect consumers when "the transaction in which [they] [are] deceived . . . occur[s] in New York."  <u>Goshen v. Mut. Life Ins. Co.</u>, 98 N.Y.2d at 324.  For example, a Florida resident who purchases an insurance policy with a New York insurer through a Florida insurance agent, and who pays his premiums from Florida, cannot state a Section 349 or 350 claim because "any deception took place in Florida, not New York."  <u>Id</u>. at 326.

Following the Court of Appeals' decision in Goshen, "two divergent lines of decisions have developed" on the territorial reach of Sections 349 and 350.  Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 123 (2d Cir. 2013).  The first line of decisions "focus[es] on where the deception of the plaintiff occurs" and the second turns "on where the underlying deceptive transaction takes place, regardless of the plaintiff's location or where the plaintiff is deceived."  Id. (collecting cases).

B.      Analysis

Plaintiff Zachmann's claims must be dismissed because the transaction in which he was allegedly deceived took place in Connecticut under either formulation of Goshen.  First, he does not allege he was deceived in New York by, for example, receiving "misleading literature" from defendants in New York.  See, e.g., Meachum v. Outdoor World Corp., 235 A.D.2d 462, 463–64 (2d Dep't 1997).  Second, Zachmann purchased his cooler in Connecticut.  Thus, Zachmann's GBL claims must be dismissed.

Whether plaintiffs have sufficiently alleged causation is a closer question.  Ultimately, the Court concludes that, even if the statutes reached Zachmann's out-of-state purchase, both plaintiffs' GBL claims must be dismissed because plaintiffs do not sufficiently allege a causal connection between their purchase of defendant's coolers and defendant's labelling.

Plaintiffs allege they "sought to purchase coolers that would retain ice for five days and keep their food and beverages cold for five days," paid a price premium for defendant's coolers in reliance on defendant's "keeps the ice" labelling, and either would not have paid that price premium or purchased the coolers at all if they had known the coolers did not actually perform as promised.  (Am. Compl. ¶¶ 39–44, 61, 64, 76, 78–79).  These allegations are insufficient to establish causation.

For one, plaintiffs' allegations are insufficient because "[a]lthough the plaintiff[s] cite[ ]

particular misleading statements by [defendant] regarding the reliability of the [coolers], [they]

nowhere state[ ] in [their] complaint that [they] saw any of these statements before [they]

purchased" the coolers.  Gale v. Int'l Bus. Machs. Corp., 9 A.D.3d 446, 447 (2d Dep't 2004);

accord Himmelstein, McConnell, Gribben, Donaghue & Joseph LLP v. Matthew Bender & Co.,

172 A.D.3d 405, 406 (1st Dep't 2019) (motion to dismiss Section 349 claim properly granted

when plaintiffs did not allege they "ever saw the allegedly deceptive representations that

purportedly harmed them"), aff'd, 37 N.Y.3d 169 (2021).  In other words, plaintiffs do not

specifically "allege that because of defendant's deceptive act"—the "keeps the ice" labelling—

they suffered an injury—that is, paying a price premium they would otherwise not have paid.

See Stutman v. Chem. Bank, 95 N.Y.2d 24, 30 (2000); see also, e.g., Ward v. TheLadders.com,

Inc., 3 F. Supp. 3d 151, 169–70 (S.D.N.Y. 2014) (allegations that plaintiffs purchased

defendant's services because they saw ads on defendant's website sufficient to allege causation).

For another, although the Court could infer causation from plaintiffs' allegations of

reliance, these allegations are conclusory and thus cannot be credited.  Plaintiffs allege they

"purchased the coolers . . . in reliance on the representations that they would retain ice for five

days."  (Am. Compl. ¶ 61).  But defendant manufactures different types of coolers, each with

different labeling.  Plaintiffs do not allege which kind of coolers they purchased or how they

were labelled.  That is, plaintiffs do not allege the coolers they actually purchased had

misleading labels, or that they were misled by those labels in particular.  Instead, plaintiffs allege

a generalized campaign of false advertising, which is insufficient to sustain claims pursuant to

Sections 349 or 350.  See Himmelstein, McConnell, Gribben, Donaghue & Joseph LLP v.

Matthew Bender & Co., 172 A.D.3d at 406; cf. Sutherland v. REMAX 2000, 2008 WL 3307201,

at *4 (N.Y. Sup. Ct. Aug. 7, 2008) (dismissing Section 349 claim when plaintiff only "ma[de] generalized allegations of false advertising" by defendants).

Accordingly, plaintiffs' GBL claims must be dismissed.

III.   Breach of Warranty Claims

    A.   Express Warranty Claim

Defendant contends plaintiffs have not stated a claim for breach of express warranty because the coolers' alleged defects are not covered by the express warranty.

The Court agrees.

    1.   Legal Standard

Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y. U.C.C. § 2-313(1)(a).

To state a claim for breach of an express warranty, a plaintiff "must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

To allege breach of the warranty, a plaintiff must allege the goods purchased do not conform to the promise made by the seller.  See, e.g., Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016).

    2.   Analysis

Plaintiffs do not allege a breach of the express warranty.

9

Plaintiffs allege defendant warranted its coolers "will be free from defects in material and workmanship." (Am. Compl. ¶ 82). That is, the alleged warranty "covers manufacturing defects, not design defects." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d at 554.[3]

However, plaintiffs allege defendant's coolers suffer from design defects, not manufacturing defects. Namely, they allege the coolers as designed do not "keep the ice" for five days. (See, e.g., Am. Compl. ¶¶ 33–37). They do not allege, for example, that the specific coolers plaintiffs purchased do not "keep the ice" for five days because of a mistake in manufacturing those specific coolers, which would be covered by defendant's express warranty.

Accordingly, plaintiffs' express-warranty claim must be dismissed.

B.     Implied Warranty of Merchantability Claim

Defendant argues plaintiffs' breach of implied warranty claim must be dismissed because plaintiffs were not in privity with defendant.

The Court agrees.

"New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warrant[y] of merchantability . . . where the only loss alleged is economic." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d at 556 (citing Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc., 58 N.Y.2d 993, 995 (1983)). A remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer. See Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015).

---

[3]     Under New York law, "a defect in a product may consist of one of three elements: mistake in manufacturing," called a manufacturing defect; "improper design," called a design defect; or "inadequacy or absence of warnings for the use of the product," called a warning defect. Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 478–79 (1980); accord McCarthy v. Olin Corp., 119 F.3d 148, 154–55 (2d Cir. 1997).

Plaintiffs allege they purchased their coolers from Walmart and Home Depot, not directly from defendant.  Thus, plaintiffs are not in privity with defendant.  Moreover, plaintiffs allege only economic loss, not personal injury.  (See Am. Compl. ¶ 98).

Accordingly, plaintiffs' implied-warranty claim must be dismissed.

C.      Magnuson-Moss Warranty Act Claim

Defendant contends plaintiffs' claim under the Magnuson-Moss Warranty Act "MMWA") must be dismissed for the same reasons their express-warranty claim must be dismissed.

The Court agrees.

Although the MMWA is a federal statute, liability under the MMWA is based on state warranty laws.  See Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (noting the MMWA "incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages").  Thus, plaintiffs' claim under the MMWA "stand[s] or fall[s]" with their state-law claims.  See Brady v. Basic Rsch., L.L.C., 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015).

Plaintiffs' claim under the MMWA is based entirely on their claim for breach of express warranty.  (See Am. Compl. ¶ 93).  Because the Court has dismissed that claim, plaintiffs' MMWA claim must likewise be dismissed.

IV.    Negligent Misrepresentation Claim

Defendant contends plaintiffs' negligent misrepresentation claim fails because plaintiffs do not allege a special or privity-like relationship between themselves and defendant.

The Court agrees.

A.    <u>Legal Standard</u>

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." <u>J.A.O. Acquisition Corp. v. Stavitsky</u>, 8 N.Y.3d 144, 148 (2007).

A "special or privity-like relationship" may exist between an injured party and "persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 180 (2011).  For example, "[p]rofessionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients," and their "fail[ure] to speak with care" may give rise to a claim for negligent misrepresentation.  <u>Kimmell v. Schaefer</u>, 89 N.Y.2d 257, 263–64 (1996) (collecting cases).

Further, the Second Circuit has suggested "that a sparsely pled relationship of trust or confidence is not fatal to a claim for negligent misrepresentation [under New York law] where the complaint emphatically alleges" the defendant who made the purported misrepresentation (i) "held or appeared to hold unique or special expertise" and (ii) "was aware of the use to which the information would be put and supplied it for that purpose."  <u>Eternity Glob. Master Fund Ltd.</u> <u>v. Morgan Guar. Tr. Co.</u>, 375 F.3d 168, 188 (2d Cir. 2004).

B.    <u>Analysis</u>

First, plaintiffs have not alleged any special relationship with defendant.  Nor do courts ordinarily find a privity-like relationship between a retail purchaser of a good and the good's

manufacturer.  See, e.g., Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 389–90

(S.D.N.Y. 2021); Barreto v. Westbrae Nat., Inc., 518 F. Supp. 3d 795, 807–08 (S.D.N.Y. 2021).

Moreover, even following the Second Circuit's suggestion that this dearth of allegations

is not fatal to plaintiffs' negligent misrepresentation claim, plaintiffs have not "emphatically

alleged" that defendant possesses unique or special expertise or was aware how the "keeps the

ice" labelling would be viewed and labelled its products for that purpose.  Instead, plaintiffs

merely allege defendant "h[eld] itself out as having special knowledge and experience in the sale

of coolers."  (Am. Compl. ¶¶ 99–100; accord Doc. #20 at 9–10).  This conclusory allegation,

however, is insufficient to sustain a negligent misrepresentation claim.  Mandarin Trading Ltd. v.

Wildenstein, 16 N.Y.3d at 180–81 ("Although Mandarin generally pleads that 'a special

relationship of trust or confidence' existed between the parties, the lack of allegations showing a

relationship with Wildenstein mandates dismissal of this claim.").

Accordingly, plaintiffs' negligent misrepresentation claim must be dismissed.

V.      Fraud Claim

Defendant argues plaintiffs do not state a fraud claim because they fail sufficiently to

allege fraudulent intent.

The Court agrees.

A.      Legal Standard

A claim for fraud under New York law requires a showing of "a misrepresentation . . .

which was false and known to be false by defendant, made for the purpose of inducing the other

party to rely upon it, justifiable reliance of the other party on the misrepresentation or material

omission, and injury."  Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).  In

other words, to state a fraud claim, a plaintiff must allege "a representation of material fact, falsity, scienter, reliance, and injury."  Small v. Lorillard Tobacco Co., 94 N.Y.2d at 57.

In federal court, state-law fraud claims are also subject to Rule 9(b) of the Federal Rules of Civil Procedure, which provides that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Id.  That is, to establish "scienter, conclusory assertions of intent are sufficient if supported by facts giving rise to a strong inference of fraudulent intent."  Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 579 (2d Cir. 2005) (per curiam).

A "strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006).  For example, a plaintiff may establish fraudulent intent by "offer[ing] facts to show that [defendant] had both a clear opportunity and strong financial motive to" engage in fraud, as well as defendant's actual knowledge of fraud.  Wight v. BankAmerica Corp., 219 F.3d 79, 91–92 (2d Cir. 2000).  Conclusory allegations of fraudulent intent are insufficient to sustain a fraud claim.  See, e.g., Baretto v. Westbrae Nat., Inc., 518 F. Supp. 3d at 808.

B.    Analysis

Plaintiffs' allegations of fraudulent intent are conclusory.  Specifically, plaintiffs allege "[d]efendant's fraudulent intent is evinced by its failure to accurately disclose the issues described [in the complaint], when it knew not doing so would mislead customers."  (Am. Compl. ¶ 105).  This is insufficient to establish fraudulent intent.  See, e.g., Baretto v. Westbrae

<u>Nat., Inc.</u>, 518 F. Supp. 3d at 808 (allegation that "[d]efendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true" insufficient to establish fraudulent intent); <u>Colpitts v. Blue Diamond Growers</u>, 527 F. Supp. 3d 562, 585–86 (S.D.N.Y. 2021) (same for allegation that "[d]efendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate").

Nor do plaintiffs' factual allegations show defendant possessed either a strong motive to commit fraud or actual knowledge of fraud.

First, plaintiffs do not allege a strong motive to commit fraud. Plaintiffs allege "[d]efendant sold more of the coolers and at higher prices than it would have in the absence of [its] misconduct, resulting in additional profits at the expense of customers. (Am. Compl. ¶ 41). Even if the Court inferred from this allegation that defendant possessed a general profit motive to commit fraud, "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." <u>Colpitts v. Blue Diamond Growers</u>, 527 F. Supp. 3d at 586.

Second, plaintiffs do not sufficiently allege actual knowledge of a fraud. Plaintiffs claim defendant acknowledged and responded to two or three customer complaints online that their coolers did not "keep the ice" for five days. Even taking these allegations as true, knowledge of three online comments does not establish actual knowledge of a fraudulent scheme. For example, other courts have declined to dismiss fraud claims in similar consumer class actions when plaintiffs alleged defendant conducted a scientific study on the challenged product and disregarded the study's results, or disregarded input by federal regulatory agencies. <u>See, e.g.</u>, <u>Colpitts v. Blue Diamond Growers</u>, 527 F. Supp. 3d at 586 (collecting cases). Three online

comments are far from a scientific study commissioned by defendant or input by defendant's federal regulator.

Plaintiffs also allege two customers made YouTube videos showing that defendant's coolers did not perform as promised.  This is insufficient to establish actual knowledge absent allegations that any of defendant's employees actually viewed the YouTube videos.  See, e.g., Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 355 (S.D.N.Y. 2020) (allegations that articles discussed defendant's products insufficient to establish fraudulent intent absent allegations that defendant's employees "were aware of these particular articles or their content").

Accordingly, plaintiffs' fraud claim must be dismissed.

VI.     Unjust Enrichment Claim

Defendant argues plaintiffs cannot, as a matter of law, plead a claim for unjust enrichment because such claim is duplicative of plaintiffs' other claims.

The Court agrees.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002).  A plaintiff states an unjust enrichment claim "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  Id.

Here, plaintiffs' unjust enrichment claim is duplicative of their other claims.  In support of their unjust enrichment claim, plaintiffs allege "[d]efendant obtained and retained benefits and

monies due to the representations of the [coolers], which were not truthful."  (Am. Compl.

¶ 107).  In other words, plaintiffs allege defendant "committed actionable wrongs" by placing

misleading labels on the coolers, and defendant was therefore enriched at plaintiffs' expense.

See Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 791.  This is the same factual allegation that

underlies plaintiffs' statutory, contract, and tort law claims.

Plaintiffs' argument that their unjust enrichment claim is pleaded in the alternative is of

no moment.  Further, the case plaintiffs cite, Burton v. iYogi, Inc., 2015 WL 4385665 (S.D.N.Y.

Mar. 16, 2015), is distinguishable.  In Burton, the plaintiff plausibly alleged she was fraudulently

induced into buying a subscription for computer-support services from defendant over the phone,

and the parties disputed whether she agreed to the subscription's terms of use online before or

after the alleged fraudulent part of the phone call.  Id. at *2, *11.  The court observed that if she

agreed to the purchase before the alleged fraud, plaintiff plausibly alleged a breach of a

"clickwrap" contract, but if she agreed to the purchase after the alleged fraud, plaintiff plausibly

alleged fraud in the inducement and that no "clickwrap" contract was formed.  Id. at *11.

Because of this uncertainty, plaintiff was permitted to plead unjust enrichment in the alternative.

Id. ("Particularly where . . . there are allegations of fraud in the inducement and a dispute as to

whether a valid contract exists, parties can and routinely do plead in the alternative fraud, unjust

enrichment, and breach of contract.").  There is no such situation here.  Instead, the allegations

supporting plaintiffs' other claims are the same as the allegations supporting their unjust

enrichment claim:  defendant's "keeps the ice" labelling is misleading, and plaintiff was injured

thereby.

Accordingly, plaintiffs' unjust enrichment claim must be dismissed.[4]

VII.   <u>Leave to Amend</u>

In the concluding sentence of their opposition brief, plaintiffs request leave to again amend their pleading in the event the Court grants the motion to dismiss.  Plaintiffs do not further explain this request, and defendant does not address the request in its reply.  In any event, the Court concludes repleading would be futile.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  However, leave to amend "may properly be denied for:  'undue delay, . . . repeated failure to cure deficiencies by amendments previously allowed, . . . [or] futility of amendment.'"  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Here, repleading would be futile because the problems with plaintiffs' amended complaint are substantive and will not be cured by better pleading.  <u>See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015) (reaffirming that denying leave to amend is proper on the grounds of "undue delay, bad faith, dilatory motive, and futility").  For example, plaintiffs were already given an opportunity to amend their pleading and their amended complaint did not cure the deficiencies identified in defendant's first motion to dismiss.  Further delay would be unwarranted and contrary to the interests of justice.  <u>See</u> Fed. R. Civ. P. 1.

Accordingly, plaintiffs' request for leave to amend is denied.

---

[4]    Because plaintiffs have failed to state claims upon which relief can be granted, the Court need not reach the question of whether plaintiffs have standing to pursue injunctive relief.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to terminate the motion (Docs. ##8, 16) and close this case.

Dated: January 18, 2022
      White Plains, NY

                    SO ORDERED:

                    _____
                    Vincent L. Briccetti
                    United States District Judge